UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2004 JUN -3 A 11: 45

THOMAS R. SUTTILL, JR., D/B/A, )
FRAMINGHAM SHELL, )
)   MAGISTRATE JUDGE Bowler
Plaintiff )
)   CIVIL ACTION NO.:
v. )
)
MOTIVA ENTERPRISES, LLC AND )
EQUIVA SERVICES, LLC )
)
Defendants )

04 11194 RWZ
DISTRICT COURT
DISTRICT OF MASS

RECEIPT # 56315
AMOUNT $150
SUMMONS ISSUED YES
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK
DATE 6/3/04

## VERIFIED COMPLAINT AND DEMAND FOR TRIAL BY JURY

### PARTIES

1. The plaintiff, Thomas R. Suttill, Jr. d/b/a Framingham Shell ("Suttill"), is an individual residing in Holliston, Massachusetts, Middlesex County.

2. The defendants, Motiva Enterprises, LLC ("Motiva") and Equiva Services, LLC ("Equiva") are limited liability companies organized under the laws of Delaware with their principal place of business in Texas.

### JURISDICTION

3. The defendants transact business in the Commonwealth pursuant to M.G.L. c. 223A, the Massachusetts Long Arm Statute.

4. This Court has subject matter jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331 - 1332.

### FACTS

5. The defendants Motiva and Equiva are merchants in the field of oil refining, lubricants and retail business operations that refine and market gasoline to Shell-branded and Texaco-branded gasoline stations. The defendants have formed a so-called "alliance" with Texaco.

1

6. Shell Oil Company and Saudi Aramco each own a fifty percent interest in Motiva.

7. Equiva is jointly owned by Motiva and Equilon Enterprises, LLC.

8. In or about August, 2000, Jon William Snow, Inc. transferred to Suttill its entire interest in the gasoline service station doing business as Framingham Shell at 480 Franklin Street, Framingham Massachusetts ("the Premises"), including but not limited to: the right to use the name "Framingham Shell"; the assets of the business, including Jon William Snow, Inc.'s interest in its Petroleum Marketing Practices Act franchise agreements under 15 U.S.C. § 2801 et. seq. with the defendants, Motiva and Equiva. A true and accurate copy of the Purchase and Sale Agreement is attached hereto as Exhibit A. True and accurate copies of the franchise agreements, i.e. retail lease agreement and retail sales agreement, are attached hereto as Exhibit B.

9. In consideration of the foregoing, Suttill paid $120,000.00 to Jon William Snow, Inc.

10. The defendants approved of Jon William Snow, Inc.'s transfer of its interest in the Premises to Mr. Suttill and subsequently, the defendants entered into Petroleum Marketing Practices Act, 15 U.S.C. § 2801, et seq. Franchise Agreements directly with Suttill. Specifically, the defendants entered into: (1) a Retail Facility Lease for the lease of the Premises to Mr. Suttill; and (2) a Retail Sales Agreement (hereinafter collectively referred to as "the Franchise Agreements"). True and accurate copies of the Franchise Agreements are attached hereto as Exhibits C (the Retail Sales Agreement) and D (the Retail Facility Lease), respectively.

11. The Retail Facility Lease was to run from December 1, 2002 through December 31, 2005.

12. The Retail Sales Agreement was to run from December 1, 2002 through December 31, 2005.

13. Pursuant to the Franchise Agreements, Suttill agreed to use the Premises solely for the operation of a motor fuel dispensing station or an automobile service station.

14. The defendants, in turn, leased the Premises from a third party. The defendants' underlying lease with the third party property owner was to expire on December 31, 2004. However, pursuant to the Franchise Agreements, as long as the property owner renewed the underlying lease agreement with the defendants, Suttill could continue to operate his business for the remainder of the lease term.

15. Pursuant to the Franchise Agreements, Suttill, like Jon William Snow, Inc., was also permitted to sell his interest in the Premises to a third party. The Retail Lease Agreement contains the following provision regarding such transfer:

> Right of First Refusal. Lessee (Thomas Suttill, Jr.) may not Transfer any of Lessee's interest in this Lease without first offering, in writing, to Transfer the same to Lessor (Motiva/Equiva) or its designee on the same terms and conditions expressly agreed to between Lessee and the third party ("Transferee"). Lessor will have 30 days after receipt of the offer and a complete and exact copy of the agreement with the Transferee to accept or reject the offer. If Lessor rejects the offer and consents to the Transfer as set forth in Article 17(a), Lessee may make the proposed Transfer to the third party, but not at a lower price or on more favorable terms than those offered to Lessor.
>
> Assignment by Lessee. This Lease is personal to Lessor (Motiva and Equiva). If Lessor elects not to exercise Lessor's right of first refusal...Lessee (Thomas Suttill, Jr.) may sell, transfer, encumber, or assign its interest under this Lease, in whole or in part, sublease any portion of the Premises, or permit any other person to occupy or use all or any part of the Premises, whether voluntarily, involuntarily, or by operation of Law (collectively, "Transfer") with the prior written consent of Lessor, which consent may be withheld consistent with applicable Law.

The Retail Sales Agreement contained a similar provision regarding the assignment of Suttill's interest.

16. After September 11, 2001, Suttill's business began to decline and he eventually decided to sell his interest in the Premises to a third party as authorized by the Franchise Agreements.

17. On or about January, 2004, Suttill began negotiating an agreement for the sale of his entire interest in the Premises, including the Franchise Agreements, to Michael Forman ("Forman"), the proprietor of Absolute Car Care in Framingham, Massachusetts.

18. Suttill subsequently notified the defendants' authorized agent that he had located a potential buyer for his interest in the Premises. Suttill was advised by the defendants' authorized agent that he needed to provide the defendants with written notice of his intention to sell his interest in the Premises, and Suttill complied with this request.

19. After Suttill provided the defendants with his written notice of his intent to transfer his interest in the Premises, the defendants unilaterally changed the gasoline delivery schedule to the Premises, delivering 11,800 gallons to Mr. Suttill as frequently as two times per week, thereby doubling the amount of gasoline deliveries to the Premises. Further, the defendants altered their billing practices for said gasoline deliveries, demanding immediate payment in full for each delivery from Mr. Suttill before he was able to re-sell the gasoline to consumers.

20. When Suttill raised an issue with the defendants regarding this change in gasoline delivery practices, Suttill was told by the defendants' agent that he had to "learn to deal with it."

21. Subsequently, through no fault of the plaintiff, Mr. Suttill's bank wired payment to the defendants for gasoline delivery ten minutes after the appointed time set by the defendants. The defendants, citing the ten-minute delay, refused to deliver gasoline to the Premises, causing Suttill to run out of gasoline.

22. On or about January, 2003, the defendants again failed to deliver gasoline to Suttill that had already been paid for, causing Suttill to run out of gasoline twice within a two week period.

23. Upon information and belief, the defendants unilaterally and wrongfully altered the gasoline delivery and payment schedule with the intention of forcing Suttill to abandon his interest in the Premises without receiving any compensation for same, thereby enabling the defendants to replace Suttill with someone of their own choosing.

24. Throughout this period of wrongful conduct by the defendants, Suttill continued to negotiate the sale of his interest in the Premises to Forman.

25. On or about February 19, 2004, Suttill and Forman reached an agreement regarding the purchase price for Suttill's interest in the Premises.

26. Suttill contacted the defendants, by and through their authorized representative, Robert Resnick ("Resnick"), to inform them that Suttill had a deal in place to sell his interest in the Premises to Forman and was providing the defendants with an opportunity to exercise the right of first refusal.

27. On or about February 19, 2004, Resnick informed Suttill that the underlying lease between the defendants and the property owner, scheduled to expire in December, 2004, would not be renewed. Resnick further indicated that he would communicate these facts directly to Forman.

4

28. Upon learning of the allegations contained in paragraph 27, Suttill responded to Resnick that he would be unable to sell his business to anyone at all if the underlying lease was not renewed.

29. On or about February 19, 2004, when Suttill expressed concern to Resnick regarding his ability to sell the business due to the problems with the underlying lease, Resnick orally informed Suttill that he would be "terminated" the following day. No written notice of termination of the Franchise Agreements was ever provided to Suttill.

30. On or about February 24, 2004, Suttill was ejected from the Premises by the defendants and ordered to remove all equipment and inventory therefrom.

31. The defendants unilaterally changed the locks to the Premises without notice to Suttill and without Suttill's knowledge or permission.

32. On or about February 24, 2004, the defendants replaced Suttill with a third party, Tony Alzimmer ("Alzimmer"), who began operating the Premises

33. Upon information and belief, Alzimmer operates approximately fifty other gas stations for the defendants.

34. Upon information and belief, Alzimmer offered to hire all of Mr. Suttill's employees.

35. On or about February 23, 2004, Alzimmer informed Suttill that the defendants had never told him that the underlying lease that expires in December, 2004 would not be renewed.

36. Upon information and belief, after Alzimmer began operating the Premises, he told Suttill's former employees that the underlying lease between the defendants and the property owner was, in fact, going to be renewed at the end of the lease term by the defendants.

37. On or about February 23, 2004, Alzimmer informed Suttill that he would have paid Suttill for his inventory if the defendants had not ordered Suttill to remove said inventory from the Premises.

38. Neither Alzimmer nor the defendants have offered anything to Suttill to compensate him for the taking of Suttill's interest in the Premises, including the Franchise Agreements.

39. Upon information and belief, the defendants have previously schemed to replace other franchisees with new operators of the defendants' own choosing by engaging in unfair and deceptive business practices.

40. The defendants currently owe Suttill approximately $14,000.00 for gasoline credit card sales to Suttill's customers, which is past due.

## COUNT I
### Misrepresentation

41. Mr. Suttill repeats and incorporates by reference herein the allegations of paragraphs 1 through 40 as if set forth at length herein.

42. The defendants, by and through their authorized agents, knowingly made false and fraudulent statements to Mr. Suttill by informing him that the underlying lease would not be renewed when in fact the defendants knew that said underlying lease would be renewed.

43. As a direct result of the defendants' false and fraudulent statements, Mr. Suttill reasonably believed that he would be unable to transfer his interest in the Premises to Mr. Forman, or to anyone else.

44. But for the defendants' false and fraudulent statements, Mr. Suttill would have reached a final agreement with Mr. Forman for the transfer of his interest in the Premises.

45. As a direct result of the defendants' false and fraudulent statements, Mr. Suttill has been damaged.

## COUNT II
### (Tortious Interference with Contractual Relations)

46. Mr. Suttill repeats and incorporates by reference herein the allegations of paragraphs 1 through 45 as if set forth at length herein.

47. The defendants intentionally and willfully misrepresented to Mr. Suttill and to Mr. Forman that the underlying lease would not be renewed in order to prevent the plaintiff from transferring his interest in the Premises to Mr. Forman, or to anyone else.

48. The defendants' actions were done with unlawful purpose to cause such damage and loss to Mr. Suttill without right or justifiable cause.

49. As a direct result of the defendants' actions, Mr. Suttill has been damaged.

## COUNT III
### (Breach of Contract)

50. Mr. Suttill repeats and incorporates by reference herein the allegations of paragraphs 1 through 49 as if set forth at length herein.

51. The Franchise Agreements are enforceable contracts.

52. Mr. Suttill has performed all of his obligations under the Franchise Agreements.

53. The defendants actions as set forth herein constitute a breach of the Franchise Agreements.

54. Mr. Suttill has been damaged as a result of the defendants' breach.

## COUNT IV
### (Petroleum Marketing Practices Act, 15 U.S.C. § 2801 et seq.)

55. Mr. Suttill repeats and incorporates by reference herein the allegations of paragraphs 1 through 54 as if set forth at length herein

56. The defendants are franchisors within the purview of the Petroleum Marketing Practices Act (15 U.S.C. § 2801, et seq.).

57. The purpose of the Petroleum Marketing Practices Act is to protect station operators/franchisees like the plaintiff from the excessive power of gasoline distributors.

58. As set forth herein, the defendants have failed to comply with the requirements of the Petroleum Marketing Practices Act, including but not limited to wrongful termination of the Franchise Agreements in furtherance of defendants' scheme to replace Mr. Suttill without compensation for his interest; failure to comply with the notice requirements in willful disregard of 15 U.S.C. § 2801 et seq.; and failure to ensure a continued supply of branded gasoline.

59. As a direct result of the defendants' violation of the Petroleum Marketing Practices Act, Mr. Suttill has been harmed.

## COUNT V
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

60. The plaintiff repeats and incorporates by reference herein the allegations of paragraphs 1 through 59 as if set forth at length herein.

61. Good faith and fair dealing are implied in all contracts.

62. Neither party to a contract shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

63. Pursuant to the Franchise Agreements, Mr. Suttill has the right to transfer his interest in the Premises.

64. In breach of the covenant of good faith and fair dealing, the defendants destroyed the plaintiff's right to transfer his interest by intentionally misrepresenting to Mr. Suttill and Mr. Forman that the underlying lease would not be renewed.

65. In breach of the covenant of good faith and fair dealing, the defendants injured Mr. Suttill's right to receive the fruits of the contract by unilaterally doubling the amount of gasoline deliveries to the Premises and demanding payment for deliveries before Mr. Suttill could even re-sell the product to consumers.

66. In breach of the covenant of good faith and fair dealing, the defendants injured Mr. Suttill's right to receive the fruits of the contract by failing to timely deliver gasoline that had already been paid for, causing Mr. Suttill to run out of gasoline for his customers.

67. In breach of the covenant of good faith and fair dealing, the defendants injured Mr. Suttill's right to receive the fruits of the contract by failing pay him for gasoline sold to customers.

68. As a direct result of the defendants' breach of the covenant of good faith and fair dealing, Mr. Suttill has been damaged.

## COUNT VI
(Violation of Chapter 93A, Section 11)

69. The plaintiff repeats and incorporates by reference herein the allegations of paragraphs 1 through 68 as if set forth at length herein.

70. The plaintiff and the defendants are engaged in trade or commerce.

71. The defendants' misrepresentation to Mr. Suttill and to Mr. Forman regarding the renewal of the underlying lease constitutes unfair or deceptive trade practices or acts.

72. The defendants' alteration of gasoline delivery resulting in the doubling of said deliveries, and defendants' subsequent practice of failing to timely deliver gasoline that had already been paid for, resulting in a gas shortage, as well as failure to pay Mr. Suttill for gasoline that had already been sold, constitutes unfair or deceptive trade practices or acts.

73. The defendants' wrongful termination of the Franchise Agreements without cause, their failure to provide written notice of the termination, and their ejectment of Mr. Suttill from the premises prior to the expiration of Franchise Agreements, including changing of the locks, constitutes unfair or deceptive trade practices or acts.

74. The plaintiff has been damaged as a result of the defendants' unfair or deceptive trade practices or acts.

## COUNT VII
(Violation of Chapter 93E)

75. Mr. Suttill repeats and incorporates by reference herein the allegations of paragraphs 1 through 74 as if set forth at length herein.

76. The defendants are subject to the provisions of M.G.L. c. 93E – Regulation of Dealers' Agreements for the Sale of Gasoline.

77. The defendants have violated c. 93E by failing to make an offer in good faith to repurchase as required by c. 93 § 4 and by wrongfully terminating the Franchise Agreements.

78. As a direct result of the defendants' willful violation of c. 93E, the plaintiff has been damaged.

## COUNT VIII
(Violations of M.G.L. c. 93 and 15 U.S.C. 45)

79. The plaintiff repeats and incorporates by reference herein the allegations of paragraphs 1 through 78 as if set forth at length herein.

80. The defendants' actions as set forth herein constitute violations of the Massachusetts Antitrust Act, M.G.L. c. 93 § 1 et seq. which prohibits unreasonable restraints of trade and monopolistic practices in the Commonwealth.

81. The defendants' actions as set forth herein constitute violations of Section 5 of the Federal Trade Commerce Act, 15 U.S.C. 45 et seq. which prohibits unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce.

82. As a result of the defendants' violation of M.G.L. c. 93 and 15 U.S.C. 45, the plaintiff has been injured.

## COUNT IX
### (Violation of M.G.L. c. 184, §18)

83. Mr. Suttill repeats and incorporates by reference herein the allegations of paragraphs 1 through 82 as if set forth at length herein.

84. Under Massachusetts law, no person shall attempt to recover possession of land in any manner other than through an action brought pursuant to c. 239 or such other proceedings authorized by law.

85. In violation of c. 184, § 18, the defendants wrongfully ejected Mr. Suttill from the Premises and changed the locks, thereby preventing Mr. Suttill from returning.

86. As a direct result of the defendants' violation of Massachusetts law, the plaintiff has been damaged.


WHEREFORE, the plaintiff demands judgment:

On Count I, in Thomas Suttill, Jr.'s favor and against the defendants in an amount equal to the damages due to the defendants' misrepresentation, and injunctive relief ordering the defendants to immediately restore possession and control over the Premises to the plaintiff, and to prevent the defendants from engaging in any further violations of the Franchise Agreements and the PMPA, as well as an award of attorneys fees, costs and whatever else the court deems meet and just;

On Count II, in Thomas Suttill, Jr.'s favor and against the defendants in an amount equal to the damages due to the defendants' tortious inference with contractual relations and injunctive relief ordering the defendants to immediately restore possession and control over the Premises to the plaintiff, and to prevent the defendants from engaging in any further violations of the Franchise Agreements and the PMPA, as well as an award of attorneys fees, costs and whatever else the court deems meet and just;

On Count III, in Thomas Suttill, Jr.'s favor and against the defendants, in an amount equal to the damages due to the defendants breach of contract, and injunctive relief ordering the defendants to immediately restore possession and control over the Premises to the plaintiff, and to prevent the defendants from engaging in any further violations of the Franchise Agreements and the PMPA, as well as attorneys' fees, costs and whatever else the court deems meet and just;

On Count IV, in Thomas Suttill, Jr.'s favor and against the defendants, in an amount equal to the damages due to defendants' breach, as well as exemplary/punitive damages and injunctive relief ordering the defendants to immediately restore possession and control over the Premises to the plaintiff, and to prevent the defendants from engaging in any further violations of the Franchise Agreements and the PMPA, an award of attorneys fees, costs and whatever else the court deems meet and just;

On Count V, in Thomas Suttill, Jr.'s favor and against the defendants, in an amount equal to the damages due to the defendants breach of the covenant of good faith and fair dealing, plus attorneys' fees, costs and whatever else the court deems meet and just;

On Count VI, in Thomas Suttill, Jr.'s favor and against the defendants, in an amount up to treble the damages due to the defendants violation of c. 93A, plus attorneys' fees, costs and whatever else the court deems meet and just;

On Count VII, in Thomas Suttill, Jr.'s favor and against the defendants, in an amount up to treble the damages due to the defendants violation of c. 93E, plus attorneys' fees, costs and whatever else the court deems meet and just;

On Count VIII, in Thomas Suttill, Jr.'s favor and against the defendants, in an amount up to treble the damages due to the defendants violation of c. 93E, plus attorneys' fees, costs and whatever else the court deems meet and just;

On Count IX, in Thomas Suttill, Jr.'s favor and against the defendants, in an amount up to treble the damages due to the defendants violation of c. 184, plus attorneys' fees, costs and whatever else the court deems meet and just;

Thomas Suttill, Jr. respectfully requests that this Honorable Court schedule a hearing as soon as practical and thereafter issue a preliminary injunction ordering the defendants to immediately restore possession and control over the Premises to the plaintiff consistent with the proposed order attached hereto, and to prevent the defendants from engaging in any further violations of the Franchise Agreements and the PMPA until a trial is held on the merits of the issues raised in this Complaint.

### Demand for Trial by Jury

The plaintiff demands a trial by jury on all issues raised herein that are so triable.

## VERIFICATION

I, Thomas Suttill, Jr., being of sound mind and legal age, hereby state that I have personal knowledge of the facts alleged in the within Verified Complaint and that they are true and accurate, to the best of my knowledge.

Signed under the pains and penalties of perjury this _12_ day of April, 2004.

_____
Thomas Suttill, Jr.

THOMAS SUTTILL, JR. D/B/A
FRAMINGHAM SHELL

By Its Attorneys,

DAVIDS & SCHLESINGER, L.L.P.

_____
Ronald M. Davids
Jennifer A. O'Brien
40 Washington Street – Suite 250
Wellesley, MA 02482
(781) 416-5055
BBO No.: 115110
BBO No.: 644477

Dated 5/11/04

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Suttill, Jr., Thomas R.
d/b/a Framingham Shell

## DEFENDANTS
Motiva Enterprises, LLC and
Equiva Services, LLC

(b) County of Residence of First Listed Plaintiff **Middlesex**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number) 781-416-5055
Ronald M. Davids, Jennifer A. O'Brien
Davids & Schlesinger, 40 Washington Street
Suite 250, Wellesley, MA 02481

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | | ☒ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
15 U.S.C. § 2801 et seq.-violations of Petroleum Marketing Practices Act

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $130,000.00 and injunctive relief
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE Zobel    DOCKET NUMBER CV-11247-RWZ

DATE 6/1/04
SIGNATURE OF ATTORNEY OF RECORD [signature]

FOR OFFICE USE ONLY
RECEIPT #  AMOUNT  APPLYING IFP  JUDGE  MAG. JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) __Thomas R. Suttill, Jr.___
   __d/b/a Framingham Shell_____

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   - [ ] I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.
   - [X] II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
              740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.       for patent, trademark or copyright cases
   - [ ] III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
              315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
              380, 385, 450, 891.
   - [ ] IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
              690, 810, 861-865, 870, 871, 875, 900.
   - [ ] V.    150, 152, 153.

   04 11194 RWZ

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.
   __LaGasse v. Shell Oil Products, CV-11247-RWZ_____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
   YES [ ]   NO [X]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
   YES [ ]   NO [X]
   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
   YES [ ]   NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
   YES [ ]   NO [X]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
   YES [ ]   NO [X]

   A. If yes, in which division do all of the non-governmental parties reside?
      Eastern Division [ ]    Central Division [ ]    Western Division [ ]

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
      Eastern Division [X]    Central Division [ ]    Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
   YES [ ]   NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME __Jennifer A. O'Brien_____
ADDRESS __Davids & Schlesinger, LLP, 40 Washington St., Suite 250, Wellesley, MA 02481__
TELEPHONE NO. __(781) 416-5055_____

(Coversheetlocal.wpd - 10/17/02)