UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| THOMAS R. SUTTILL, JR., D/B/A FRAMINGHAM SHELL, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| MOTIVA ENTERPRISES LLC AND EQUIVA SERVICES LLC, | ) ) ) |
| Defendants. | ) ) ) |

Civil Action No. 04-CV-11194 RWZ

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Defendants, Motiva Enterprises LLC ("Motiva") and Equiva Services LLC ("Equiva") (collectively, "Motiva" or the "defendants"),[1] respectfully submit this memorandum of law in opposition to plaintiff's Motion for A Preliminary Injunction (the "Motion"). Plaintiff's Motion should be denied because plaintiff executed an agreement to mutually terminate his franchise with Motiva on February 13, 2004, and therefore is not entitled to preliminary injunctive relief under § 2805 of the Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801 et seq. ("PMPA").

---

[1] Plaintiff brought this action against both Motiva, franchisor to plaintiff prior to the mutual termination of their relationship in February 2004, and Equiva, a related entity to Motiva that does not have a franchise relationship (or any other relationship) with franchisee-dealers, and therefore is not properly a party to this action. Accordingly, defendants will be referred to as "Motiva" throughout this memorandum.

## I.    INTRODUCTION

Plaintiff brought this action by Verified Complaint filed with the Court on June 3, 2004. On June 8, 2004, plaintiff served both his complaint and Motion on defendants. In his complaint, plaintiff alleges that his Shell-branded franchise with Motiva was wrongfully terminated in February 2004 in violation of § 2804 of the PMPA, and further claims other non-PMPA causes of action.[2] According to plaintiff's own complaint and Motion, plaintiff left the Framingham, Massachusetts premises at which he operated a Shell-branded franchise in February 2004. (Pl.'s Compl. at ¶ 30; Motion at p.2.) More than three months later, plaintiff now asks this Court to reinstate him at the premises. The sole argument plaintiff makes in support of his Motion is that he was not provided with the requisite notice pursuant to § 2804 of the PMPA prior to the termination of his franchise in February 2004. (See Memorandum In Support of The Plaintiff's Motion for A Preliminary Injunction ("Pl.'s Mem.") at p.1.)

Conspicuously absent from plaintiff's Motion is any reference to the single critical fact relevant to the adjudication of his Motion: plaintiff executed a Mutual Termination Agreement and Release on February 13, 2004 (the "Termination Agreement") (copy attached as Exhibit A to Declaration of Robert A. Resnik).[3] That Agreement provides in relevant part:

1.    Termination. For good and valuable consideration, Franchisor [Motiva] and Franchisee [plaintiff] hereby agree that, effective as of **February 13, 2004** ("Effective Date"), the following agreements between them (including all amendments and modifications of the agreements and all agreements relating thereto) and the relationship established under the agreements relating to the automobile service station or motor fuel

---

[2] In addition to the PMPA claim, plaintiff alleges claims for misrepresentation, tortious interference with contractual relations, breach of contract, breach of the implied covenant of good faith and fair dealing, violation of Mass. Gen. Laws chs. 93, 93A, 93E and 184, and violation of the Federal Trade Commission Act, 15 U.S.C. § 45 et seq.

[3] The Declaration of Robert A. Resnik ("Resnik Decl.") is being filed simultaneously with this opposition.

dispensing station located at 480 FRANKLIN STREET, FRAMINGHAM, MA 01701 ("Premises"), are terminated.

> Retail Sales Agreement effective January 1, 2003
> Retail Facility Lease effective January 1, 2003

The agreements and relationships will not be reinstated, extended or renewed after the Effective Date.

(Termination Agreement at p.1.) Titled "Release," paragraph 2 of the Termination Agreement contains a mutual general release, excepting only "claims of Franchisor against Franchisee for indebtedness, reimbursement, or indemnification, or relating to property of Franchisor, which may have been or is now in Franchisee's possession." (Id.) Paragraph 3 confirms that a copy of the summary statement required by § 2804 of the PMPA in conjunction with a termination is attached to the Termination Agreement. (Id.) Plaintiff executed the Termination Agreement on February 13, 2004, and further acknowledged by his signature on the page titled "Acknowledgement of Receipt" that he received both a copy of the Termination Agreement and the PMPA summary statement referenced in Paragraph 3. (Id. at pp.2-3).

The language of the Termination Agreement and its intended effect could not be more clear: by its execution, plaintiff and Motiva intended to terminate permanently the franchise relationship and related agreements between them, and further to release each other from all claims and demands, excepting only certain discrete claims reserved by Motiva. Moreover, the Termination Agreement satisfies all § 2804 notice requirements, including that of timely notice, because the normal 90-day time period for termination does not apply in the mutual termination context. See Section II.B, infra. Because plaintiff's franchise was terminated pursuant to a Termination Agreement duly executed by plaintiff, his claim for injunctive

relief – brought more than three months later – is wholly without merit and should be denied.[4]

## II. PLAINTIFF IS NOT ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF UNDER § 2805 OF THE PMPA.

Section 2805(b)(2) of the PMPA provides the test by which this Court must assess plaintiff's claim for preliminary injunctive relief. Such relief is only appropriate where:

> (A) the franchisee shows – (i) the franchise of which he is a party has been terminated or the franchise relationship of which he is a party has not been renewed, and (ii) there exists sufficiently serious questions going to the merits to make such questions a fair ground for litigation; and

> (B) the court determines that, on balance, the hardships imposed upon the franchisor by the issuance of such preliminary injunctive relief will be less than the hardship which would be imposed upon such franchisee if such preliminary injunctive relief were not granted.

15 U.S.C. § 2805(b)(2)(A) and (B).

"It of course is the franchisee's initial burden under the PMPA to establish that its franchise has been terminated or not renewed (15 U.S.C. § 2805(c); Duff v. Marathon Petroleum Co., 51 F.3d 741, 744 (7th Cir. 1995)), and if it fails to satisfy that burden, our inquiry is at an end." Beachler v. Amoco Oil Co., 112 F.3d 902 (7th Cir. 1997). Upon proof of a termination or nonrenewal by the franchisee, "'the franchisor shall bear the burden of going forward with evidence to establish as an affirmative defense that such termination or nonrenewal was permitted under section 2802(b). . . .' 15 U.S.C. § 2805(c). Thus, to qualify for preliminary injunctive relief under § 2805(b)(2), the franchisee must rebut the franchisor's evidence that the termination or nonrenewal was permissible, by showing the existence of

---

[4] The Termination Agreement contains a general release of all claims against Motiva, which necessarily includes release of the PMPA claim upon which plaintiff's Motion is premised. While Motiva limits its treatment of the Termination Agreement in this opposition to its specific bearing on plaintiff's claim for preliminary injunctive relief pursuant to § 2805(b), Motiva notes that the release constitutes independent grounds for this Court to deny plaintiff's motion. Motiva further reserves the right subsequently to move this Court for summary judgment on plaintiff's complaint in its entirety based on plaintiff's general release in the Termination Agreement.

sufficiently serious questions as to the propriety of the termination under the PMPA to present

a fair ground for litigation.  See Khorenian v. Union Oil Co., 761 F.2d 533, 536 (9th Cir.

1985)."  Chestnut Hill Gulf, Inc. v. Cumberland Farms, Inc., 788 F. Supp. 616, 621 (D.

Mass. 1992).

Applying this test here, plaintiff has failed to rebut the validity of the Termination

Agreement (or even to mention it), and his claim for preliminary injunctive relief should be

denied.

A. **Termination of plaintiff's franchise through the Termination Agreement is a permissible basis for termination under § 2802(b).**

As Motiva does not dispute that plaintiff's franchise was terminated in February 2004,

plaintiff has met his initial burden of demonstrating a termination.  By virtue of plaintiff's

execution of the Termination Agreement, however, Motiva has satisfied its own burden of

"going forward with evidence to establish as an affirmative defense that such termination or

nonrenewal was permitted under section 2802(b)."  15 U.S.C. § 2805(c).  One such

permissible grounds for termination is where, as here, franchisor and franchisee choose to end

the franchise relationship by mutual agreement.  Section 2802(b) expressly identifies as a

permissible basis for termination or nonrenewal:

> An agreement, in writing, between the franchisor and the franchisee to terminate the
> franchise or not to renew the franchise relationship, if –
>
> > (i) such agreement is entered into not more than 180 days prior to the date of
> > such termination or, in the case of nonrenewal, not more than 180 days prior to
> > the conclusion of the term, or the expiration date, stated in the franchise;
> >
> > (ii) the franchisee is promptly provided with a copy of such agreement, together
> > with the summary statement described in section 2804(d) of this title; and

> (iii) within 7 days after the date on which the franchisee is provided a copy of such agreement, the franchisee has not posted by certified mail a written notice to the franchisor repudiating such agreement.

15 U.S.C. § 2802(b)(2)(D).

Courts consistently enforce mutual termination agreements when these statutory conditions have been met, and correspondingly, summarily reject actions under the PMPA when such agreements are in place. See, e.g., Persaud v. Exxon Corp., 867 F. Supp. 128, 140 (E.D.N.Y. 1994) (denying plaintiff's application for preliminary injunction under PMPA where parties had entered mutual termination agreement because plaintiff's station was failing, plaintiff had received summary statement under § 2804(d) and plaintiff did not make any effort to rescind agreement within the 7-day repudiation period); Kim v. Mobil Corp., Civil Action No. CV 85-4689-PAR, 1986 U.S. Dist. LEXIS 22749, at *48-49 (C.D. Cal. July 18, 1986) (copy attached hereto as Exhibit A) (granting defendant summary judgment on basis of mutual termination under the PMPA); French v. American Oil Co., Civil Action No. IP-80-314-C, 1981 U.S. Dist. LEXIS 9669, at *4 (S.D. Ind. June 11, 1981) (copy attached hereto as Exhibit B) (granting defendant summary judgment, recognizing that "mutual nonrenewal agreement is an expressly authorized method of nonrenewal pursuant to the PMPA."); Rowe v. Amoco Oil Co., 723 F.2d 911, 1983 U.S. App. LEXIS 12411, at *5-6 (6th Cir. 1983)[5] (affirming summary judgment where plaintiff failed to repudiate written cancellation agreement); cf. Scheele v. Mobil Oil Corp., 510 F. Supp. 633, 636 (D. Mass. 1981) (acknowledging that mutual termination agreement is an authorized method of nonrenewal under the PMPA, but denying defendant's motion to dismiss PMPA claims where defendant did not provide § 2804

---

[5] This is an unpublished decision of the Sixth Circuit. Consistent with Sixth Circuit Rule 28, a copy of the decision is attached hereto as Exhibit C.

summary statement because it had not yet been promulgated at the time the mutual termination agreements were entered into in 1978).

The executed Termination Agreement plainly reflects the propriety of the termination of plaintiff's franchise pursuant to 15 U.S.C. § 2802(b)(2)(D). First, the Termination Agreement is an agreement in writing to terminate the franchise. It was executed by both Motiva and plaintiff. It was entered into by plaintiff on February 13, 2004, the Effective Date of termination. Plaintiff was provided with a copy of the Termination Agreement and the § 2804 summary statement, as confirmed by his signature on the Acknowledgement of Receipt page. Lastly, plaintiff has never repudiated the Termination Agreement by any means, and more importantly, did not give written notice of such repudiation by certified mail to Motiva within seven days of February 13, 2004.

By properly effectuating this mutual termination between the parties, Motiva has fulfilled its burden of demonstrating the propriety of the termination of plaintiff's franchise in accordance with 15 U.S.C. § 2802(b)(2)(D).

**B.    Motiva satisfied the applicable notice requirements of § 2804 of the PMPA.**

Plaintiff's sole claim for wrongful termination is that Motiva failed to satisfy the notice requirements of § 2804. Not surprisingly – given that plaintiff nowhere acknowledges in his complaint or Motion that he executed the Termination Agreement – plaintiff asserts with respect to notice simply that "no written notice was ever provided." (Pl.'s Mem. at p.9.) This assertion is plainly incorrect because the Termination Agreement satisfied the requirements of § 2804.

Section 2804 requires that prior to termination of the franchise, the franchisor shall furnish notification of such termination in accordance with the form and delivery requirements of § 2804(c).[6]

As to the timing of the notice, a franchisor is normally required to do so not less than 90 days prior to the date on which such termination takes effect. <u>See</u> 15 U.S.C. § 2804(a)(1) and (2).[7] Although plaintiff erroneously suggests this 90-day requirement is absolute, (Pl.'s Mem. at p.8), the plain language of the statute provides that in circumstances where it would not be reasonable to furnish notification with the 90-day time period, notification shall be

---

[6] Section 2804(c) provides: "(c) Manner and form of notification. Notification under this section —

(1) shall be in writing;

(2) shall be posted by certified mail or personally delivered to the franchisee; and

(3) shall contain —

(A) a statement of intention to terminate the franchise or not to renew the franchise relationship, together with the reasons therefor;

(B) the date on which such termination or nonrenewal takes effect; and

(C) the summary statement prepared under subsection (d) of this section."

[7] Section 2804(a) provides: "General requirements applicable to franchisor. Prior to termination of any franchise or nonrenewal of any franchise relationship, the franchisor shall furnish notification of such termination or such nonrenewal to the franchisee who is a party to such franchise or such franchise relationship —

(1) in the manner described in subsection (c) of this section; and

(2) except as provided in subsection (b) of this section, not less than 90 days prior to the date on which such termination or nonrenewal takes effect."

furnished "on the earliest date on which furnishing such notification is reasonably practicable."

15 U.S.C. § 2804(b)(1)(A).[8]

The Termination Agreement and attached PMPA summary statement comply with all §

2804(c) notice requirements. Motiva hand-delivered to plaintiff the written Termination

Agreement and related PMPA summary statement. (Resnick Decl. at ¶4.) The Termination

Agreement necessarily stated the mutual agreement of the parties as the basis for termination.

It provided February 13, 2004, as the Effective Date of the termination, and included the §

2804 summary statement. Plaintiff expressly acknowledged receipt of both the agreement and

the summary statement by his signature on the Acknowledgement of Receipt.

---

[8] Section 2804(b)(1) provides: "(b) Additional requirements applicable to franchisor  (1) In circumstances in which it would not be reasonable for the franchisor to furnish notification, not less than 90 days prior to the date on which termination or nonrenewal takes effect, as required by subsection (a)(2) of this section —

  (A) such franchisor shall furnish notification to the franchisee affected thereby on the earliest date on which furnishing of such notification is reasonably practicable; and

  (B) in the case of leased marketing premises, such franchisor —

    (i) may not establish a new franchise relationship with respect to such premises before the expiration of the 30-day period which begins —

      (I) on the date notification was posted or personally delivered, or

      (II) if later, on the date on which such termination or nonrenewal takes effect; and

    (ii) may, if permitted to do so by the franchise agreement, repossess such premises and, in circumstances under which it would be reasonable to do so, operate such premises through employees or agents."

Although plaintiff made no argument with respect to the § 2804(b)(1)(B) requirement of not establishing a new franchise relationship at the premises within a 30-day period after the Effective Date of plaintiff's termination, Motiva notes that it also complied with that § 2804(b)(1)(B) requirement. The operator at the station subsequent to plaintiff's departure operated the station under a bridge agreement (not a PMPA franchise relationship) so that the station would be operated temporarily until Motiva could locate, train and/or otherwise arrange for a long-term retailer to operate the premises, in accordance with the requirements of § 2804(b)(1)(B). (See Resnik Decl. at ¶5.)

With respect to the timing of the Termination Agreement, courts have concluded that it is not reasonable to furnish 90 days' notice where parties mutually terminate the franchise, because the franchisor may not know of a franchisee's willingness to mutually terminate until the franchisee actually executes the mutual termination agreement. Thus, courts apply § 2804(b) in the mutual termination context, finding reasonable notice to be given simply by virtue of the franchisee's execution of the mutual termination agreement. See Persaud v. Exxon Corp., 867 F. Supp. at 139 (denying plaintiff's application for preliminary injunction under PMPA to rescind mutual termination agreement, and concluding that § 2804(b)(1) notice requirements were met because "the date that the Mutual Termination Agreement was executed . . . constituted the earliest date on which furnishing the required notification was reasonably practicable, and that proper notice, in accordance with § 2804(b), was furnished [by providing the mutual termination agreement with attached PMPA summary statement] on that date"); Rowe v. Amoco Oil Co., 723 F.2d 911, 1983 U.S. App. LEXIS 12411, at *5 (in affirming that franchisor complied with the notice provisions of § 2804(b), the Sixth Circuit concluded that "[t]he execution of the cancellation agreement between the parties on July 31, 1979 was notice of termination of appellant's franchise"); Kim v. Mobil Corp., 1986 U.S. Dist. LEXIS 22749, at *24-25 (noting that compliance with § 2804 notice requirements is normally achieved through provision of written mutual termination agreement and related PMPA summary statement).

Moreover, the cases cited by plaintiff in support of his claim are irrelevant to the circumstances here. (See Pl.'s Mem. at pp.8-9.) In Bent v. Leemon Oil Co., Inc., 849 F. Supp. 1180, 1184 (E.D. Mich. 1994), the notice issue was that the franchisee never received

- 10 -

any PMPA notice; instead, the franchisor only served a notice to quit on the franchisee for eviction under state summary process law. In <u>Hanes v. Mid-America Petroleum, Inc.</u>, 577 F. Supp. 637, 646-47 (W.D. Mo. 1983), the franchisor orally informed the franchisee that further customer complaints would not be tolerated and without further notice of any kind, the franchisor two months later removed the brand signage from the station and refused to supply franchisee with gasoline for retail sale. In <u>Clark v. Mobil Oil Corp.</u>, 496 F. Supp. 132, 136 (E.D. Mo. 1980), <u>aff'd</u> 652 F.2d 2 (8th Cir. 1981), the franchisee had a trial franchise, which under § 2803 is a one-year franchise that may be nonrenewed for any reason at the conclusion of that term so long as the § 2804 notice provisions are met. Having found that the notice's articulated basis for nonrenewal was inadequate, the trial court held that the parties must continue the franchise relationship. There, however, the relationship already had continued uninterrupted since the notice of nonrenewal was issued, as plaintiff had brought timely suit before the effective date of termination and obtained a temporary restraining order pending adjudication of the action. <u>Id.</u> at 134.

In this case, plaintiff executed a Termination Agreement which itself complied with all of the notice requirements of § 2804, and now inexplicably seeks to be reinstated at the station months after the franchise was mutually terminated. Because Motiva complied with the notice requirements of § 2804 through the presentation and execution of the Termination Agreement, plaintiff's claim for preliminary injunctive relief should be denied.

**C.    Plaintiff is not entitled to preliminary injunctive relief because he has failed to demonstrate a sufficiently serious question going to the merits to make it a fair ground for litigation pursuant to § 2805(b)(2)(A)(ii).**

Plaintiff has made no showing that there is <u>any</u> question, let alone a sufficiently serious question, going to the merits to make it a fair ground for litigation in connection with the Termination Agreement. Mysteriously, plaintiff does not even acknowledge the existence of the Termination Agreement in his complaint or Motion. Nevertheless, it exists and effectively refutes plaintiff's claim of a sufficiently serious question going to the merits to make it a fair ground for litigation. Accordingly, plaintiff fails to satisfy this prong of the § 2805(b) test as well.

**D.    The hardship imposed on Motiva by granting the requested injunctive relief is not less than the hardship imposed on plaintiff if the injunctive relief were not granted.**

The Court does not need to reach the § 2805(b)(2)(B) prong of the PMPA test for injunctive relief, because plaintiff has failed to demonstrate a sufficiently serious question going to the merits to make it a fair ground for litigation. Still, plaintiff's arguments concerning the hardship he will face if the requested relief is not granted ignore the hardship to Motiva and to the individual who has been operating the station subsequent to plaintiff's departure in February 2004. To alter the status quo and reinstate plaintiff to the premises would cause substantial harm to the dealer now operating that station, who has been working to develop customer goodwill and establish a profitable business of his own.

The hardship faced by a subsequent station operator is an important consideration in evaluating a plaintiff-franchisee's request for reinstatement of his now-terminated franchise. In <u>McFadden v. Amoco Oil Co.</u>, 486 F. Supp. 274 (D.S.C 1979), the plaintiff-franchisee

executed a mutual termination and release agreement based on his doctor's advice that a medical condition would prevent him from continuing to operate the station. When plaintiff subsequently received a second medical opinion after termination that he could still operate a service station, he sought a preliminary injunction to be reinstated at the station. The court denied the motion for preliminary injunction. Id. at 276. In balancing the hardships on all involved, the court concluded that "[a]lthough plaintiff will be damaged, the record shows that [the new franchisee, also a co-defendant in the action] will also be damaged since he has planned to move into the station and that defendant Amoco could well be damaged if it does not allow the co-defendant to lease the station." Id. Moreover, the McFadden court noted that "[t]he public interest is such that citizens should be able to make contracts with confidence and expect that these contracts would be performed, particularly when Congress has gone out of its way to protect a franchisee with the various safeguards set forth in the [PMPA]." Id.

The same hardship factors are at issue here, yet made even more compelling in favor of Motiva and the new operator because the new operator has been at the station for some months, while in McFadden, the new dealer had yet to begin operating the station himself. For all these reasons, this Court should conclude that plaintiff likewise has failed to satisfy his burden as to the balance of hardships test as well.

### E. Reinstating plaintiff to the station that he voluntary left three months ago and another dealer now operates is beyond the nature of relief available under § 2805(c).

The nature of plaintiff's requested relief – reinstatement of a franchise long since terminated by mutual agreement – is not within the traditional ambit of preliminary injunctive relief afforded by the PMPA. In the normal case, a franchisee is given 90 days' notice of a

- 13 -

termination or nonrenewal so that he may bring an action to enjoin that termination or nonrenewal <u>before it occurs</u>.  In such instances, the purpose of preliminary injunctive relief is to maintain the status quo pending adjudication of the action on the merits.  <u>See</u> <u>Dersch Energies, Inc. v. Shell Oil Co.</u>, 314 F.3d 846, 863 (7th Cir. 2002) (citing <u>Koylum v. Peksen Realty Corp.</u>, 272 F.3d 138, 147 (2d Cir. 2001) ("Because 'district courts . . . enjoy broad discretion in fashioning temporary equitable remedies, especially under the PMPA's lenient standard, . . . a district court has the power to preserve the status quo between the parties during the pendency of the litigation (i.e., the existing terms of the franchise relationship")).

Plaintiff's requested relief is at odds with the PMPA's purpose with respect to preliminary injunctive relief.  As this Court noted recently when denying a motion for preliminary injunction in the PMPA context, "[g]ranting injunctive relief in order to turn the clock back to . . . [reinstate the terms of a franchise term that had since expired] would exceed the Court's power 'to preserve the status quo between the parties during the pendency of the litigation.'" <u>Marcoux v. Shell Oil Prods. Co.</u>, Civil Action No. 01-11300-RWZ, 2003 U.S. Dist. LEXIS 18757, at *7-8 (D. Mass. Oct. 22, 2003) (Zobel, J.) (copy attached hereto as Exhibit D) (citing <u>Dersch Energies, Inc. v. Shell Oil Co.</u>, 314 F.3d at 863).  <u>See</u> <u>also</u> <u>Dersch</u>, 314 F.3d at 865 (citing <u>NSY, Inc. v. Sunoco, Inc.</u>, 218 F. Supp. 2d 708, 712 (E.D. Pa. 2002) (noting that "the PMPA gives the franchisee a cause of action against the franchisor for violations of the Act's provisions, including the right to seek a preliminary injunction prior to the expiration of the franchise agreement.").  As the <u>Dersch</u> court cautioned,

> Although federal courts are required to grant the PMPA "a liberal construction consistent with is overriding purpose to protect franchisees," <u>Brach [v. Amoco Oil Co.</u>, 677 F.2d 11213, 1221 (7th Cir. 1982)], we are not empowered "to take liberties with the PMPA's carefully stated provisions and reengineer the statute in the name of

- 14 -

rough justice." <u>C.K. Smith & Co., Inc. v. Motiva Enterprises LLC</u>, 269 F.3d 70, 76 (1st Cir. 2001). <u>See</u> <u>also</u> [<u>Shell v. Shell Oil Co.</u>, 216 F. Supp. 2d 634, 641 (S.D. Tex. 2002)] (holding "this Court does not have license to read a remedy into a statute that Congress did not enact. Section 2804 and 2805 provide adequate remedies for aggrieved dealers consistent with the balancing of interests the PMPA drafters intended to achieve.") (internal citation omitted). After all, the PMPA "constituted a diminution of the property rights of franchisors and thus should not be interpreted to reach beyond its original language and purpose." <u>May-Som Gulf [v. Chevron U.S.A., Inc.</u>, 869 F.2d 917, 921 (6th Cir. 1989)].

314 F.3d at 866. Consistent with these principles, this Court should decline plaintiff's requested relief where plaintiff seeks not the preservation of the status quo, but the reinstatement of a franchise he agreed to terminate more than three months ago, at a station long since occupied by another service station operator.

Due to the nature of the requested relief, this Court should deny plaintiff's Motion.

## III.    CONCLUSION

Plaintiff executed a Termination Agreement that constituted proper substantive grounds for termination under § 2802, and was provided to plaintiff in compliance with the notice requirements of § 2804. For all the foregoing reasons, this Court should deny plaintiff's request for the extraordinary injunctive relief of being reinstated at the premises months after mutually terminating his franchise.

Dated:  July 6, 2004

**DEFENDANTS,**
**MOTIVA ENTERPRISES LLC AND**
**EQUIVA SERVICES LLC**
By Their Attorneys

Paul D. Sanson (Fed Bar No. ct05477)
Karen T. Staib (Fed. Bar. No. ct21119)
Gregg P. Goumas (BBO #643661)
SHIPMAN & GOODWIN LLP
One Constitution Plaza
Hartford, CT 06103-1919
(860) 251-5000

## CERTIFICATE OF SERVICE

I, Gregg P. Goumas, hereby certify that on this 6th day of July, 2004, I served a copy of the foregoing memorandum of law on all parties to this action by mailing same, via First Class Mail, postage prepaid, to all counsel of record.

Signed under the pains and penalties of perjury.

Gregg P. Goumas

375566 v.01 S1

- 16 -