UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS R. SUTTILL, JR., <br> D/B/A FRAMINGHAM SHELL, <br><br> Plaintiff, <br><br> v. <br><br> MOTIVA ENTERPRISES LLC <br> AND EQUIVA SERVICES LLC, <br><br> Defendants. | Civil Action No. 04-CV-11194 RWZ |

## JOINT PRETRIAL CONFERENCE MEMORANDUM

In preparation for the pretrial conference on January 27, 2005, the plaintiff, Thomas R. Suttill, Jr., d/b/a Framingham Shell, and defendants, Motiva Enterprises LLC and Equiva Services LLC, hereby jointly submit this Memorandum in accordance with the Court's January 19, 2005 Order.

The Court determined that, as a threshold matter, a trial should be held on the sole issue of whether the document entitled "Mutual Termination Agreement and Release" (the "Agreement") was valid and enforceable against the parties to that Agreement. The adjudication of that issue would constitute "Phase One" of this case. In anticipation of that trial, the Court established a discovery plan which permitted the parties to take discovery relevant to the issue to be tried in Phase One only. Accordingly, this Memorandum addresses pretrial issues relating only to adjudication of Phase One of this action.

The parties further note that a limited number of depositions remain to be completed. First, due to a medical emergency that arose for plaintiff's counsel, the depositions of Motiva representative Robert Resnik and third-party witness Michael Forman had to be postponed from

their scheduled date of January 14, 2005. Second, the deposition of Motiva representative James Schiemer had to be postponed from its scheduled date of January 25, 2005, due to travel difficulties associated with the recent blizzard. The Phase One discovery period is otherwise set to end on January 26, 2005. The parties will therefore jointly be requesting at the pretrial conference that the discovery deadline be extended for the limited purpose of conducting these three remaining depositions. The postponement of these depositions was unavoidable, and due to scheduling difficulties, they cannot be completed prior to the January 27, 2005 pretrial conference.

Accordingly, the parties foresee that they may supplement the stipulations as to facts, witnesses and exhibits set forth herein after conclusion of these three remaining depositions. Testimony from those depositions may also affect whether either plaintiff or defendants determine the case to be disposable by summary judgment. At present, defendants anticipate filing a motion for summary judgment after the conclusion of the discovery period.

With respect to the specific issues set forth in the Court's Order, the parties respond as follows:

1. **Trial Counsel For Plaintiff:**
   Thomas J. Schlesinger
   Jennifer A. O'Brien
   Davids & Schlesinger, P.C.
   40 Washington Street, Suite 250
   Wellesley, MA  02481
   (781) 416-5055

   **Trial Counsel For Defendants:**
   Paul D. Sanson
   Karen T. Staib
   Shipman & Goodwin LLP
   One Constitution Plaza
   Hartford, CT  06103
   (860) 251-5000

**2.     Jury Trial Request:**

Plaintiff claimed this action for jury trial in his complaint and seeks a jury trial on the issue of the validity and/or the enforceability of the Mutual Termination Agreement and Release. With respect to the limited Phase One issue of validity/enforceability of the Mutual Termination Agreement and Release, defendants understood through discussion with the Court at the initial pretrial conference that the Court intended for the Phase One issue to be tried to the Court, and do not concede that plaintiff necessarily is entitled to a jury trial on the release issue.

**3.     Parties' Positions on Liability and Damages:**

    **A.     Plaintiff's Position on Liability and Damages:**

It is the plaintiff's position that the Mutual Termination Agreement ("the Agreement") is invalid and unenforceable based on the following:

First, Mr. Suttill was fraudulently induced into signing the Agreement. Motiva, by and through its agents, misrepresented to Mr. Suttill the status of the underlying property lease. In reliance on the false representation, Mr. Suttill signed the Agreement without receiving any compensation for his franchise, which he had purchased for $120,000.00.

Additionally, the Agreement is not enforceable as Mr. Suttill signed the Agreement under duress caused by the defendants. For example, the institution of the AIM Program by the defendants created an enormous financial burden for Mr. Suttill and he was attempting to sell his interest in his franchise to a third party. However, after Motiva fraudulently misrepresented that the property lease would not be renewed, Mr. Suttill reasonably believed that he would be unable to sell his interest in the franchise to anyone. Accordingly, the duress created by Motiva caused him to sign the Agreement.

Furthermore, the Agreement is not enforceable as the defendants failed to comply with the notice requirements of the PMPA. Specifically, the PMPA requires a ninety-day notice period before termination of a franchise. Here, the defendants terminated Mr. Suttill's franchise without any prior notice at all. The defendants also failed to provide Mr. Suttill with a signed copy of the Agreement as required by the PMPA. Failure to do so, including failure to provide a copy of the required summary page, effectively deprived Mr. Suttill of his seven day right of rescission. Since strict adherence with the notice requirement of the PMPA is required, the Agreement is not enforceable.

Also, the Agreement is not enforceable because there was no consideration provided by Motiva.

Even if enforceable, the Agreement, by its own terms, does not terminate Mr. Suttill's franchise as it does not refer to the Retail Sales Agreement and Retail Lease Agreement in effect at that time. It refers to non-existent agreements that are effective January, 2003 and not to Mr. Suttill's franchise agreements. Since the contract was drafted by the defendants and was not negotiated by the parties, it is a contract of adhesion and therefore, it is strictly construed against the party that drafted the Agreement.

Lastly, the Agreement is not enforceable because its terms are unconscionable and against public policy. Motiva has still retained claims against Suttill and has not offered any consideration for the termination of Mr. Suttill's franchise.

Since the parties are only adjudicating the issue of enforceability of the Agreement, the issue of damages is not addressed at length herein.

The plaintiff reserves the right to supplement his position in accordance with rules of procedure and orders of court.

### B.  Defendants' Position on Liability and Damages:

It is defendants' position that the Mutual Termination Agreement and Release (the "Agreement") entered into by plaintiff on February 13, 2004 was valid and should be enforced by this Court, and that plaintiff's Complaint should therefore be dismissed.

The Agreement was entered into in accordance with the Petroleum Marketing Practices Act ("PMPA") requirements for mutually terminating franchise relationships. Courts consistently enforce mutual termination agreements when these statutory conditions have been met, and correspondingly, summarily reject actions under the PMPA when such agreements are in place. See, e.g., Persaud v. Exxon Corp., 867 F. Supp. 128, 140 (E.D.N.Y. 1994) (denying plaintiff's application for preliminary injunction under PMPA where parties had entered mutual termination agreement because plaintiff's station was failing, plaintiff had received summary statement under § 2804(d) and plaintiff did not make any effort to rescind agreement within the 7-day repudiation period); Kim v. Mobil Corp., Civil Action No. CV 85-4689-PAR, 1986 U.S. Dist. LEXIS 22749, at *48-49 (C.D. Cal. July 18, 1986) (granting defendant summary judgment on basis of mutual termination under the PMPA); French v. American Oil Co., Civil Action No. IP-80-314-C, 1981 U.S. Dist. LEXIS 9669, at *4 (S.D. Ind. June 11, 1981) (granting defendant summary judgment, recognizing that "mutual nonrenewal agreement is an expressly authorized method of nonrenewal pursuant to the PMPA."); Rowe v. Amoco Oil Co., 723 F.2d 911, 1983 U.S. App. LEXIS 12411, at *5-6 (6th Cir. 1983) (affirming summary judgment where plaintiff failed to repudiate written cancellation agreement). Contrary to plaintiff's assertions, and consistent with the case law cited above, the Agreement satisfied the PMPA procedural requirements.

The additional arguments plaintiff makes disputing the existence of consideration for the Agreement and the substantive propriety of the terms of the Agreement are likewise flawed. The Agreement was properly entered into, and plaintiff failed to timely repudiate the Agreement within seven days of February 13, 2004, the date he executed the Agreement. See, e.g., Persaud, 867 F. Supp. at 140; Rowe v. Amoco Oil Co., 1983 U.S. App. LEXIS 12411, at *5-6. In addition, defendants deny plaintiff's claims of misrepresentation and fraud concerning the process by which the parties entered into the Agreement, as will be demonstrated once the remaining depositions are taken in this Phase One.

Defendants reserve the right to supplement this statement in accordance with the rules of this Court.

**4.     Stipulated Facts:**

1. Suttill operated a Shell-branded service station at 480 Franklin Street, Framingham, Massachusetts (the "Premises").

2. Suttill operated the Premises as a franchisee of Motiva, as "franchisee" is defined under the Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801 et seq.

3. At the time Suttill ceased operating the Premises, the then most current franchise agreements under which he operated the station as a franchisee of Motiva were: (a) the Retail Sales Agreement between Motiva and Suttill, executed by Suttill on November 22, 2002; and (b) the Retail Facility Lease between Motiva and Suttill, executed by Suttill on November 22, 2002.

4. Suttill signed a document entitled "Mutual Termination Agreement and Release," which was produced by the defendants in this matter bearing bates-number MOTIVA 1-3.

5. Suttill signed the Mutual Termination Agreement and Release on February 13, 2004. Motiva, by and through its authorized representative, signed the Mutual Termination Agreement and Release on February 25, 2004.

6. Suttill was provided with an unsigned copy of the Mutual Termination Agreement and Release on February 13, 2004. Suttill was not provided with a signed copy of the Mutual Termination Agreement and Release.

7. Suttill ceased operating the station on February 17, 2004.

## 5. Contested Issues of Fact:

1. What Robert Resnik communicated to Thomas Suttill, Jr. concerning the status of the lease agreement between Motiva and Framingham Franklin, LLC.

2. Whether Mr. Suttill relied on Mr. Resnik's representation concerning the status of the lease agreement between Motiva and Framingham Franklin, LLC in signing the Mutual Termination Agreement and Release.

3. Whether Mr. Resnik told Mr. Suttill that he had to sign the Mutual Termination Agreement and Release on the same day that Mr. Resnik provided same to Mr. Suttill.

4. Whether Mr. Resnik waited at Mr. Suttill's station until Mr. Suttill signed the Agreement.

5. The status of the lease agreement between Motiva and Framingham Franklin, LLC during the relevant period.

6. Whether Motiva created a financial hardship for Mr. Suttill by instituting the AIM program, thereby causing Mr. Suttill to sign the Mutual Termination Agreement and Release.

7.   Whether there was consideration for the parties' execution of the Mutual Termination Agreement and Release.

By agreeing to jointly identify the foregoing as contested issues of fact, defendants do not concede that any such issues of fact are necessarily material to the validity and/or enforceability of the Agreement.

**6.   Jurisdictional Questions:**

The parties do not claim that any jurisdictional questions are at issue in Phase One of the action.

**7.   Issues of Law:**

   **A.   Issues Claimed by Plaintiff:**

1.   Whether Mr. Suttill was fraudulently induced into signing the Mutual Termination Agreement and Release ("the Agreement"), thereby rendering the Agreement unenforceable.  See Elias Bros. Restaurants, Inc. v. Acorn Enterprises, Inc., 831 F. Supp. 920, 927 (D. Mass. 1993)(Under Massachusetts law, a party to a contract may rescind it if he has been induced to enter it in reliance on false and fraudulent representations as to material fact.)  Such fraud consists of a false representation of a material fact made with knowledge of its falsity or in culpable ignorance of its truth.  Turner v. Johnson & Johnson, 809 F. 2d 90 (1st Cir. 1986); Cherry v. Crispin, 346 Mass. 89, 92 (1963); McGrath v. C.T. Sherer Co., 291 Mass. 35, 58 (1935).  Under Restatement, 2d, Contracts, § 162(1), it is also fraudulent if the person either (i) does not have confidence in the truth of his assertion or (ii) knows that he does not have a basis for his assertion.

2. Whether the Mutual Termination Agreement and Release was signed under economic or other duress contributed to or caused by the defendants, thereby rendering the Agreement unenforceable. See International Underwater Contractors, Inc. v. New England Tel. and Tel. Co., 8 Mass.App.Ct. 340 (1979), where the Court described the elements of economic duress in the following terms:

(1) That one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party. Id. at 342. International Underwater further provides that, when examining allegations of economic duress, the reviewing court should consider "the unequal bargaining power of the parties (both in terms of their comparative size and resources as well as the financial difficulties into which the plaintiff has fallen, allegedly because of the defendant's acts)," and the disparity, if any, between the offer of settlement and the plaintiffs' alleged sacrifice. Id. at 346.

3. Whether Motiva violated the PMPA by terminating Mr. Suttill's franchise without any prior notice, thereby rendering the Mutual Termination Agreement unenforceable. See 15 U.S.C. § 2802(b)(1)(A), requiring that a valid termination under the PMPA must comply with the notice requirements in section 2804. Section 2804 provides for a ninety-day notice requirement. The Second Circuit has cautioned that "the 90 days notice ordinarily required by the PMPA should not be lightly excused." Zipper v. Sun Company, Inc., 947 F. Supp. 62, 68 (1996), quoting Wisser Co., Inc. v. Mobil Oil Corp., 730 F. 2d 54, 60 (2d Cir. 1984). The Court in Zipper held that only in cases "where a franchisor would suffer large additional deficiencies if it provided 90 days notice to a franchisee, it is reasonable to provide less than 90 days notice." Id. at 69.

4.      Whether Motiva violated the PMPA by failing to provide Mr. Suttill with a signed copy of the Mutual Termination Agreement, thereby rendering the Agreement unenforceable. Contrast Persaud v. Exxon Corporation, 867 F. Supp. 128, (1994) where franchisee was hand delivered a fully executed duplicate original of the mutual termination agreement, thereby triggering seven day right of rescission. In the instant case, Motiva did not even sign the Mutual Termination Agreement and Release until February 25, 2004, twelve days after the franchise was to be terminated. Mr. Suttill never received a signed copy of the Mutual Termination Agreement and Release and therefore, the seven day right of rescission was never triggered.

5.      Whether the Mutual Termination Agreement and Release terminated Mr. Suttill's franchise. Refer to the Mutual Termination Agreement and Release, which refers to wrong effective dates for Retail Facility Lease and Retail Sales Agreement. See Lechmere Tire & Sales Co. v. Burwick, 360 Mass. 718, 720-721 (1973)(When construction of a contract of adhesion is in issue, it is to be construed strictly against the drafter).

6.      Whether the terms of the Mutual Termination Agreement and Release are unconscionable, rendering the Agreement unenforceable. See Waters v. Min Ltd., 412 Mass. 64, 68 (1992), holding that "gross disparity in the consideration alone "may be sufficient to sustain [a finding that the contract is unconscionable]," since the disparity "itself leads inevitably to the felt conclusion that knowing advantage was taken of [one party]." Jones v. Star Credit Corp., 59 Misc. 2d 189, 192, 298 N.Y.S. 2d 264 (N.Y. Sup. Ct. 1969). See, e.g., Matter of Friedman, 64 A.D. 2d 70, 85, 407 N.Y.S. 2d 999 (N.Y. 1978) (contract unconscionable because art dealer's "consideration" inadequate where widow conveyed more than 300 works of art to dealer and received neither the payment of purchase price nor right to receive a fixed price within a definite time, only dealer's promise of payment if and when sales made); Nelson v. Nelson, 57 Wash. 2d

321, 323-324, 356 P. 2d 730 (1960) (contract found unconscionable where defendant agreed to exchange equity in her property--worth more than $4,750--for equity in the plaintiff's property valued at $2,750). High pressure sales tactics and misrepresentation have been recognized as factors rendering a contract unconscionable. <u>Industralease Automated & Scientific Equip. Corp. v. R.M.E. Enters., Inc.</u>, 58 A.D. 2d 482, 488-490, 396 N.Y.S. 2d 427 (N.Y. 1977). "If the sum total of the provisions of a contract drive too hard a bargain, a court of conscience will not assist its enforcement." <u>Waters v. Min. Ltd</u>, 412 Mass. at 234, citing Campbell Soup Co. v. Wentz, 172 F. 2d 80 (3d Cir. 1948).

The plaintiff reserves the right to supplement this statement in accordance with rules of procedure and orders of court.

**B.    Issues Claimed by Defendants:**

It is defendants' position that the single, threshold issue in this Phase One is whether the Mutual Termination Agreement and Release is valid and therefore enforceable under the PMPA and Massachusetts law. Plaintiff's issues 1-6 above are, at bottom, all components of an overall claim that the Agreement is not valid for procedural defects and substantive defects. In that connection, plaintiff raises two specific defenses by which he seeks to dispute the enforceability of the Agreement he executed, namely, misrepresentation/fraud and economic duress.

Defendants' compliance with PMPA requirements was discussed at length in Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for A Preliminary Injunction dated July 6, 2004, and defendants refer to those arguments and supporting case law by reference herein. Defendants further deny plaintiff's misrepresentation/fraud and economic duress arguments, both with respect to the factual allegations that would predicate such a claim and to

whether those factual allegations could constitute misrepresentation/fraud and economic duress as a matter of law.

Defendants reserve the right to supplement this statement in accordance with the rules of this Court.

**8.    Amendment to the Pleadings:**

The plaintiff seeks to amend his complaint, particularly to correct inaccurate dates referenced therein. The motion to amend the complaint with amended complaint will be filed with this Court and served on the defendants within the next several days. Defendants reserve the right to object to such amendments to the extent any such amendments substantively alter the notice of plaintiff's claims that defendants are entitled to receive through the allegations made in the complaint.

**9.    Additional Matter to Aid in Disposition of the Action:**

The parties respectfully refer the Court to the introductory paragraphs of this Memorandum, in which discovery completion and potential summary judgment submissions are addressed.

**10.   Probable Length of Trial:**

Assuming a trial day from 9:00 a.m. – 1:00 p.m., the parties anticipate that adjudication of this matter will take 1-2 days.

**11.   Witnesses:**

    **A.    Witnesses Plaintiff Will Call:**

        1.    Thomas R. Suttill, Jr.
             11 Park Avenue
             Framingham, Massachusetts

    2.    Joyce Suttill
           11 Park Avenue
           Framingham, Massachusetts

    3.    Kristofer Whalen
           15 Balsam Drive
           Ashburnham, Massachusetts

    4.    Eric Knapp
           C/o Plaza Properties
           29 Sunderland Road
           Worcester, Massachusetts

**B.    Witnesses Plaintiff May Call:**

    1.    Jon Snow
           19 Travis Road
           Natick, Massachusetts

    2.    John Gatturna
           42 Bogastow Brook Road
           Holliston, Massachusetts

    3.    Thomas Gatturna
           c/o 42 Bogastow Brook Road
           Holliston, Massachusetts

    4.    Robert Resnik
           c/o Motiva
           7 Heywood Street
           Shrewsbury, Massachusetts

    5.    James Schiemer
           c/o Motiva
           7 Dover Farm Road
           Medfield, Massachusetts

    6.    Tony El Nemr
           24 Coachman Ridge Road
           Shrewsbury, Massachusetts

       7.      Dan Gardner – operator of El-Nemr's station
             c/o ENT, Inc.
             480 Franklin Street
             Framingham, Massachusetts

The plaintiff reserves the right to supplement his witness list in accordance with rules of procedure and orders of court.

**C.**    **Witnesses Defendants Will Call:**

1. Robert A. Resnik
   Motiva Enterprises LLC
   7 Heywood Street
   Shrewsbury, MA 01545

2. James Schiemer
   Motiva Enterprises LLC
   7 Dover Farm Road
   Medfield, MA 02052

3. Joyce Suttill
   11 Park Avenue
   Framingham, MA

4. Thomas R. Suttill, Jr.
   11 Park Avenue
   Framingham, MA

**D.**    **Witnesses Defendants May Call:**

1. Tony El-Nemr
   c/o ENT, Inc.
   352 Boston Turnpike
   Shrewsbury, MA

2. Michael Forman
   c/o Absolute Car Care
   Natick, MA

      3.     Eric Knapp
            c/o Plaza Properties
            29 Sunderland Road
            Worcester, MA

      4.     Jon Snow
            19 Travis Road
            Natick, Massachusetts

      5.     Kristopher Whalen
            15 Balsam Drive
            Ashburnham, MA

Defendants reserve the right to supplement these witness lists in accordance with the rules of procedure and orders of this Court.

**12.   Agreed Upon Exhibits:**

    1.   Retail Facility Lease (Exh. 3 to T. Suttill deposition).

    2.   Retail Sales Agreement (Exh. 2 to T. Suttill deposition).

    3.   Mutual Termination Agreement and Release (unsigned, Exh. 6 to T. Suttill deposition).

    4.   Mutual Termination Agreement and Release (signed, Exh. 7 to T. Suttill deposition).

    5.   Mutual Termination Agreement and Release (unsigned with PMPA summary attached, Exh. 8 to T. Suttill deposition).

**Plaintiff's Exhibits:**

The plaintiff intends to offer the documents produced by Motiva during discovery as well as the exhibits from the depositions of Eric Knapp and Tony El-Nemr as exhibits at trial. The

following are specific documents from discovery and the depositions that the plaintiff intends to offer:

1. Exhibit 1 from Deposition of Eric Knapp – Notes/History from 9/25/03 to 1/7/05

2. Exhibit 2 from Deposition of Eric Knapp – Lease Agreement

3. Exhibit 3 from Deposition of Eric Knapp – Letter dated 3/18/98 regarding Shell exercising its first option to extend.

4. Exhibit 1B from Deposition of Eric Knapp – Letter from Jim Schiemer dated 8/12/2003

5. Exhibit 1D from Deposition of Eric Knapp – Facsimile with signed acceptance to extend period for exercising option to 4/1/2004

6. Exhibit 1E from Deposition of Eric Knapp – electronic mail between Jim Schiemer and Eric Knapp dated 1/26/04 and 1/27/04

7. Exhibit 1F from Deposition of Eric Knapp – electronic mail from Schiemer to Sam Adams and Eric Knapp dated 1/26/04 with agreement amending lease

8. Exhibit 1G from Deposition of Eric Knapp – second lease amendment

9. Exhibit 1H from Deposition of Eric Knapp – email from Schiemer to Knapp dated 2/5/04

10. Exhibit 1I from Deposition of Eric Knapp – email dated 2/10/05 with second lease amendment

11. Exhibit 1J from Deposition of Eric Knapp – email from Schiemer to Knapp dated 3/4/04

12. Exhibit 1K from Deposition of Eric Knapp – letter to Jim Schiemer from Suzan Drezek of Plaza Properties dated February 11, 2004 with Second Lease Amendment signed by Sam Adams attached thereto.

13. Exhibit 1L from Deposition of Eric Knapp – emails between Schiemer and Pamela Stevens of Plaza Properties dated 2/10/04

14. Exhibit 1M from Deposition of Eric Knapp – email from Suzan Drezek to Schiemer dated 3/1/04

15. Exhibit 1N from Deposition of Eric Knapp – email between Schiemer and Knapp – 3/8/04

16. Exhibit 1O from Deposition of Eric Knapp – emails between Schiemer and Knapp dated 3/8/04-3/9/04

17. Exhibit 1R from Deposition of Eric Knapp – extension of period to exercise option to extend to 6/1/04

18. Exhibit 1S from Deposition of Eric Knapp – emails between Schiemer and Knapp

19. Deposition of Eric Knapp – email from Schiemer to Knapp dated 11/11/03 regarding response to Schiemer

20. Deposition of Eric Knapp – email 8/4/03 from Sam Adams to Pamela Stevens regarding letter from Motiva

21. Deposition of Eric Knapp – letter to Jim Schiemer from Suzan Drezek dated 8/18/03

22. Deposition of Eric Knapp – letter from Schiemer to Knapp dated 1/13/04 regarding annualized rent

23. Deposition of Eric Knapp – same as Exhibit 22, but with additional note regarding 90,000 annualized rent

24. Deposition of Eric Knapp – First Lease Amendment

25. Deposition of Eric Knapp – Schiemer email to Knapp dated 2/5/04

26. Deposition of Eric Knapp – Email from Pamela Stevens to Schiemer dated 2/11/04

27. Deposition of Eric Knapp – Faxed letter signed by Sam Adams dated 3/12/04 extending time to exercise option to 6/1/04

28. Deposition of Eric Knapp – Email between Schiemer and Knapp regarding permitted uses dated 4/1/04

29. Deposition of Eric Knapp – Email between Schiemer and Knapp regarding permitted uses dated 4/16/04

30. Deposition of Eric Knapp – Email between Schiemer and Knapp dated 4/26/04 regarding amendment

31. Deposition of Eric Knapp – Email between Schiemer and Knapp faxed on 4/28/04 regarding lease negotiations

32. Deposition of Eric Knapp – Email dated 4/28/04 with Sam Adams additional comments - "I am a little confused – or is he confused?"

33. Deposition of Eric Knapp – Email between Knapp and Adams dated 4/28/04 – does not want to risk losing Shell

34. Deposition of Eric Knapp – Email between Schiemer and Knapp dated 4/30/04

35. Exhibit 1 from Deposition of Tony El-Nemr – MS CORO agreement and multisite non petroleum facility lease

36. Documents produced by Motiva – Motiva Bates No. 38-41 – assignment of lease and notice of assignment

37. Motiva Bates No. 59 – email dated 3/12/04 from Stephen Bradley to Gregg McCoombs regarding extension and lifting restriction for MSO

38. Motiva Bates No. 60 – email from Schiemer to Steve Bradley with ARIA economics

39. Motiva Bates No. 80-92

40. Motiva Bates No. 101 – 102 emails between Schiemer/Resnik and Bradley/Schiemer

41. Motiva Bates No. 103-109 emails

42. Motiva Bates No. 110 – email to Schiemer

43. Motiva Bates No. 111 – 113 – emails

44. Motiva Bates No. 128 – email from Schiemer

45. Motiva Bates No. 148 – 200 – contracts with Tony El Nemr

46. Motiva Bates No. 201-205- Mutual Termination Agreement and Release

47. Motiva Bates No. 206-207

48. Motiva Bates No. 208-269 – Mutual Termination Agreement, Bridge Extension, correspondence to Mr. Suttill

49. Motiva Bates No. 270 – credit card sales

50. Motiva Bates No. 271-279 – emails with Resnik regarding Suttill

51. Motiva Bates No. 280-283 - includes email regarding rent

52. Motiva Bates No. 285-287 – emails regarding rent

53. Motiva Bates No. 288-290 – emails between Resnik and Bradley

54. Motiva Bates No. 291-292 – emails regarding rent credit

55. Motiva Bates No. 293-294 – email regarding transfer to ENT

56. Motiva Bates No. 295 – Resnik email 2/17/04

57. Motiva Bates No. 296 – 301 – emails from 2/17/04

58. Motiva Bates No. 302-307 – emails from 2/16/04

59. Motiva Bates No. 308-309 – Resnik email

60. Motiva Bates No. 312-323 – Resnik email – mutual termination agreement

61. Motiva's answers to interrogatories

The plaintiff reserves the right to supplement his exhibit list in accordance with rules of procedure and orders of court.

As there was not adequate time for defendants to review each document contained in plaintiff's exhibit list between when the foregoing exhibit list was produced to defendants and the deadline for filing this joint Memorandum, defendants reserve the right to address the admissibility of these exhibits by supplemental submission to the Court as necessary. The parties agree to work together to stipulate to additional documents in advance of any trial of Phase One.

Dated: January 26, 2005

| | |
|---|---|
| **PLAINTIFF,**<br>**THOMAS R. SUTTILL, JR.,**<br>**D/B/A FRAMINGHAM SHELL**<br>By His Attorneys, | **DEFENDANTS,**<br>**MOTIVA ENTERPRISES LLC AND**<br>**EQUIVA SERVICES LLC**<br>By Their Attorneys |

Jennifer A. O'Brien (BBO# 644477)
DAVIDS & SCHLESINGER, P.C.
40 Washington Street, Suite 250
Wellesley, MA 02481
(781) 416-5055

Paul D. Sanson (Fed Bar No. ct05477) (with permission)
Karen T. Staib (Fed. Bar. No. ct21119)
Gregg P. Goumas (BBO #643661)
SHIPMAN & GOODWIN LLP
One Constitution Plaza
Hartford, CT 06103-1919
(860) 251-5000

### CERTIFICATE OF SERVICE

I, Jennifer A. O'Brien, hereby certify that on this 26th day of January, 2005, I served a copy of the foregoing Memorandum on all parties to this action by sending via facsimile and mailing same, via U.S. Mail, to all counsel of record. Signed under the pains and penalties of perjury.

Jennifer A. O'Brien

392436 v.01 S1