UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS R. SUTTILL, JR., D/B/A, FRAMINGHAM SHELL, <br><br> Plaintiff <br><br> v. <br><br> MOTIVA ENTERPRISES, LLC AND EQUIVA SERVICES, LLC <br><br> Defendants | ) ) ) ) ) ) ) CIVIL ACTION NO.: 04-CV-11194 RWZ ) ) ) ) ) ) ) |

**THE PLAINTIFF'S MOTION TO CONTINUE TRIAL**

I.   INTRODUCTION

This case arises out of the Petroleum Marketing Practices Act ("PMPA"). The plaintiff, Thomas R. Sutill Jr. d/b/a Framingham Shell, hereby moves to continue the trial in the above-captioned matter, which is scheduled to begin on March 14, 2005. As grounds for his motion, Mr. Suttill, by and through his attorneys, has recently become aware of additional evidence in Motiva's possession that is relevant to the upcoming trial.[1] However, this evidence has not been produced by Motiva and therefore, Mr. Suttill

---

[1] The evidence referred to herein was admitted into evidence at trial in the matter of Marcoux v. Shell Oil Products Co., Inc., Civil Action No. 01-11300-RWZ, MDL Docket No. 1461 but has not been produced in this case. The evidence goes to Motiva's motive for terminating Mr. Suttill's franchise and is germane to Mr. Suttill's allegation in his Complaint that "[u]pon information and belief, the defendants have previously schemed to replace other franchisees with new operators of the defendants' own choosing by engaging in unfair and deceptive business practices."

requires further discovery, including the taking of the deposition of at least one additional Motiva witness, as well as additional document requests, interrogatories and admissions. Accordingly, Mr. Suttill requests that this Court continue the trial for another sixty (60) days to permit Mr. Suttill to take further discovery from the defendants.

II.  BACKGROUND

Mr. Suttill filed various claims against the defendants arising out of the termination of his franchise with Motiva. In response to those claims, the defendants produced a document entitled Mutual Termination Agreement and Release (" the Agreement"). Mr. Suttill denies that the Agreement is enforceable. Not only was the Agreement obtained by fraud and/or duress, but its terms are unconscionable, there was no consideration and the Agreement does not comply with the PMPA. The Court determined, as a threshold matter, that a trial should be held on the sole issue of whether the Agreement is valid and enforceable against the parties to that Agreement. The adjudication of that issue would constitute "Phase One" of this case. In anticipation of that trial, the Court established an abbreviated discovery plan which permitted the parties to take discovery relevant to the issue to be tried in Phase One only.

The parties, by and through counsel, attended a pre-trial conference on January 27, 2005 and a trial date of March 14, 2005 was assigned at the conference. At that time, the parties had not yet deposed several witnesses[2], including Robert Resnik, the Motiva Account Manager for Mr. Suttill's Shell-branded station and James Schiemer, another Motiva deponent. Mr. Resnik was subsequently deposed on February 9, 2005.[3]

---

[2] Due to medical issues involving plaintiff's counsel, the deposition of Mr. Resnik and another witness had been scheduled but were cancelled prior to the pre-trial conference.
[3] Mr. Resnik's deposition transcript has not yet been provided to the plaintiff by the Court Reporter at this time.

2

During his deposition, Mr. Resnik testified that Mr. Suttill's franchisee-operated station[4] had been converted into a company-operated station after his franchise had been terminated. Mr. Resnik did not know the reasons for the change, nor did he know whether the station was more profitable to Motiva as a company-operated station. Mr. Resnik testified that in the year 2003, before becoming Mr. Suttill's Account Manager in 2004, he was only responsible for company-operated stations, and not ROROs, in his capacity as Account Manager. He further testified that RORO stations could not be converted into company-operated stations unless said stations were "turned back to Shell or acquired by Shell." Mr. Resnik also testified that he was aware of three other Massachusetts retailers like Mr. Suttill who entered into termination agreements with Motiva in 2004 and 2005.

After Mr. Resnik's deposition, Mr. Suttill, by and through counsel, began to investigate the circumstances and rationale surrounding the termination of Motiva's franchisee-operated stations and the subsequent conversion of Mr. Suttill's station into a company-operated station. That investigation led counsel to review publicly available documents in the recent trial of Marcoux v. Shell Oil Products, Inc. Based on a preliminary review of said documents, the plaintiff has now learned that Motiva "embarked upon a widespread plan to divest itself of underperforming stations and to acquire quality RORO operated sites and to convert those stations to company operated sites in order to earn greater profits for Motiva."[5] Counsel has further learned from the Marcoux case materials that "Motiva's goals in Boston, New Hampshire and Worcester was to convert at least 95 ROROs to company stations such that the market would be

---

[4] Motiva refers to such stations as "ROROs" – Retailer Operated Retail Outlet.
[5] This allegation is based upon the deposition of Motiva Rule 30(b)(6) designee Eugene Goll from the Marcoux trial and was taken from Plaintiffs' Proposed Finding of Fact in Marcoux as are all subsequent quotes.

3

transformed from one in which franchise dealers comprised 78% of the 'class of trade' (before the conversion) to one in which franchised dealers only comprised 14% (after the conversion).[6] If forced to buy out these locations, Motiva estimated that it would cost as much as $200,000.00 per station to purchase the franchisees' good-will and up to $133 million to accomplish the investment/conversion goals for the region."[7]

The plaintiffs in the Marcoux case also uncovered evidence that "by March 2000, Motiva had made site-by-site decisions as to which Massachusetts service stations it sought to convert from franchise to company operated" and that "Motiva kept its plan to convert the network secret from the RORO operators." However, the restrictions imposed by the PMPA "limited Motiva's right to terminate the franchises." Motiva's own documents provided to the plaintiffs in Marcoux "acknowledge the legal impediments to conversion caused by the PMPA and noted a need to devise '**methods to overcome these restrictions** (emphasis added).'"[8] The plaintiffs in Marcoux argued that in light of the high cost of conversion, coupled with the restrictions imposed by the PMPA, "Motiva embarked on an unlawful plan designed to force its RORO operators, including the Lessee-Dealers, out of business and to convert their franchise operated

---

[6] Support for this allegation is based upon Plaintiffs' Trial Exhibit No. 34 from the Marcoux trial.
[7] Support for this allegation is based upon Plaintiffs' Trial Exhibits No. 10 and 34 from the Marcoux trial.
[8] Support for this allegation is based upon Plaintiffs' Trial Exhibit No. 29 from the Marcoux trial. The plaintiffs in Marcoux also discovered that "Shell considered any business model that was not subject to the PMPA to be a 'pro' or 'benefit' and viewed the PMPA as a 'weakness.' Witness Eugene Goll testified at his videotaped deposition that Motiva could convert the ROROs by direct negotiations with the dealers, using a third party to value the businesses, or running the dealers over with a truck.

gasoline stations into company owned and operated stations and to do so without (i) incurring the cost inherent in buy-outs or (ii) complying with the requirements of the PMPA."

The exhibits from the Marcoux trial also reveal that, in Massachusetts, after Motiva initiated its conversion plan, the number of RORO operated stations decreased from 173 (in January of 1998) to 96 (in January, 2003). During that same time period, the number of company operated stations increased from 3 to 40.[9]

III.   ARGUMENT

As set forth in detail herein, Mr. Suttill has now learned from the materials in the Marcoux trial that Motiva had a clear motive to terminate his franchise: Mr. Suttill operated one of the many franchisee-operated stations that Motiva had planned to convert into a more profitable company-operated station. Since Motiva had already determined that the cost of buying out franchisees like Mr. Suttill was too expensive, Motiva fraudulently induced Mr. Suttill into entering the Agreement under economic duress, just as Motiva had done to other franchisees as part of its master plan to convert ROROs into company-operated stations while evading the requirements of the PMPA.

Since none of the relevant trial exhibits from Marcoux as described herein have been produced in this case, Mr. Suttill needs discovery from Motiva on the issue of motive as set forth in detail herein. This includes a Rule 30(b)(6) deposition of a Motiva designated witness, as well as further document production, admissions and interrogatories regarding same. Establishing motive is absolutely critical to Mr. Suttill's

---

[9] Refer to Plaintiffs' Trial Exhibit No. 192 from the Marcoux trial.

case as it will provide extremely persuasive support for his defenses against the enforceability of the Agreement. Accordingly, Mr. Suttill seeks a sixty day continuance for the purpose of obtaining discovery from Motiva on the issue of motive.

IV.   <u>CONCLUSION</u>

As set forth herein, the recent discovery of evidence from the <u>Marcoux</u> trial concerning Motiva's motive for terminating Mr. Suttill's franchise is extremely important to Mr. Suttill's upcoming trial. Since there has been no discovery at all on the issues raised herein, Mr. Suttill requests that this Court provide him with an additional sixty days to obtain discovery as set forth in this motion.

WHEREFORE, Mr. Suttill hereby moves that this Court:

(1) Grant this motion and continue the trial an additional sixty days;

(2) Grant all other just relief.

>THOMAS SUTTILL, JR. D/B/A
>FRAMINGHAM SHELL
>
>By His Attorneys,
>
>DAVIDS & SCHLESINGER, P.C.
>
>_____
>Ronald M. Davids
>Jennifer A. O'Brien
>Thomas J. Schlesinger
>40 Washington Street – Suite 250
>Wellesley, MA 02482
>(781) 416-5055
>BBO No.: 115110
>BBO No.: 644477
>BBO No.: 546226

## CERTIFICATE OF SERVICE

    I, Jennifer A. O'Brien, hereby certify that a true copy of the above document was served upon the attorney for the defendants by facsimile and mail on February 25, 2005.

*Jennifer A. O'Brien*